UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JOSEPH CROSS, | Case No. 24-cv-2168 (LMP/DTS) |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |
| CORPORATE SECURITY SOLUTIONS, INC., *now known as* SECURITY CHECK ME, LLC, | |
| Defendant. | |

Ryan D. Peterson, **Consumer Justice Law Firm PLC, Edina, MN**, for Plaintiff.

Henry Chalmers, Natalie L. Cascario, and Kelsey Victoria O'Neill, **Arnall Golden Gregory LLP**, **Atlanta, GA**; and Maliya Gabrielle Rattliffe, Sandra S. Smalley-Fleming, and Terrence J. Fleming, **Fredrikson & Byron, P.A.**, **Minneapolis, MN**, for Defendant.

Plaintiff Joseph Cross ("Cross") alleges that Defendant Corporate Security Solutions, now known as Security Check Me (hereinafter "Defendant"), provided an inaccurate background check on him in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, and that the inaccurate report caused him to be prohibited from volunteering at his daughters' elementary school. *See generally* ECF No. 30. Cross also brings claims of defamation and negligence under Minnesota state law, based on the same inaccurate report. *Id.* ¶¶ 103–14. Defendant moves to dismiss, arguing that the background check does not constitute a "consumer report" and that the FCRA therefore does not apply. ECF No. 39, ECF No. 41 at 5–7. Defendant alternatively argues that, if the FCRA does apply, the Court must dismiss the state-law claims because the

FCRA preempts those claims. ECF No. 41 at 8–9. For the reasons below, the Court denies Defendant's motion to dismiss the FCRA claim but grants the motion as to the state-law claims.

## BACKGROUND

On February 24, 2024, Cross applied to volunteer at two events hosted by his daughters' elementary school. ECF No. 30 ¶¶ 42, 44. The school, as part of the volunteer application process, required him to pass a background check. *Id.* ¶ 43. Defendant, a consumer reporting agency who "sells background checks to employers," had a contract with the school to provide such background checks. *Id.* ¶¶ 15, 46. Accordingly, the school ordered a background check of Cross from Defendant, and Defendant completed its report on February 26, 2024. *Id.* ¶¶ 47–48.[1] The background check inaccurately reported that Cross was subject to pending felony criminal charges in Minnesota. *Id.* ¶¶ 49–52. Cross, however, had been acquitted of the felony in July 2022, a fact available through "public records." *Id.* ¶¶ 52–53.

Because of the background check's inaccurate information, the school denied Cross's volunteer application. *Id.* ¶ 57. Cross informed the school that the background check was inaccurate and provided the school with court records showing that he had been acquitted. *Id.* ¶¶ 59–60. He also filed this lawsuit on June 6, 2024. *Id.* ¶ 67. On September 10, 2024, Cross reapplied for volunteer positions at the school. *Id.* ¶¶ 68, 70.

---

[1] The parties variously refer to the report provided by Defendant as a "consumer report," a "background report," and a "background check." Because the ultimate report issued here is most commonly and colloquially known as a background check, the Court will use that phrase.

2

The school once again obtained a background check from Defendant, the background check again reported that Cross had a pending felony, and the school again rejected his application. *Id.* ¶¶ 72–75. Cross applied once more, on December 20, 2024, and Defendant again provided the same inaccurate information to the school. *Id.* ¶¶ 82–87.

Cross alleges that Defendant failed to "follow reasonable procedures to assure maximum possible accuracy" of a consumer report, in violation of the FCRA, specifically 15 U.S.C. § 1681e(b). *Id.* ¶¶ 95–102. He also alleges state-law claims of defamation and negligence. *Id.* ¶¶ 103–14. He seeks "actual, statutory, and punitive damages" under the FCRA, "any available actual damages at common law," "punitive damages pursuant to Minn. Stat. § 549.20," and attorneys' fees and costs. *Id.* at 21–22.

Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). First, Defendant argues that the FCRA does not apply here because the background check it provided was regarding a volunteer position and therefore does not constitute a consumer report under the FCRA. ECF No. 41 at 5–7. Second, Defendant argues that—if the FCRA does apply—Cross's state-law claims should be dismissed because they are preempted by the FCRA. *Id.* at 8–9. And third, Defendant argues that Cross's request for punitive damages under Minnesota law fails as a matter of law because Cross did not allege "willful indifference," and is otherwise procedurally improper because Minn. Stat. § 549.191 requires a party to receive permission from a court before asserting claims for punitive damages, which Cross did not seek or receive. *Id.* at 9–10.

# ANALYSIS

To overcome a motion to dismiss for failure to state a claim, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At this stage, "a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014). However, "the Court will not give the plaintiff the benefit of unreasonable inferences . . . and is not bound to accept as true a legal conclusion couched as a factual allegation." *Harris v. Medtronic Inc.*, 729 F. Supp. 3d 869, 877 (D. Minn. 2024) (internal quotation marks omitted) (citations omitted).

## I.  Application of the FCRA

Congress enacted the FCRA to "insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). The FCRA, therefore, requires "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization" of furnished information. *Id.* § 1681(b).

Relevant here, the FCRA requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Id.* § 1681e(b). The FCRA also provides a cause of action for "willful or negligent failure to comply with any of the FCRA's requirements," including the failure to follow

4

reasonable procedures to ensure accuracy. *Yang v. Gov't Emps. Ins. Co.*, 146 F.3d 1320, 1322 (11th Cir. 1998) (citing 15 U.S.C. §§ 1681n–1681p)).

By its terms, Section 1681e(b) is only applicable where a Defendant provided a "consumer report." And the FCRA defines consumer report as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
>
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>
> (B) employment purposes; or
>
> (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

For a given report to qualify as a consumer report, then, it must contain "three fundamental elements." *Yang*, 146 F.3d at 1323. First, a "consumer reporting agency" must communicate information.[2] *Id.* Second, the "communication of information" must bear on any one of a list of factors. *Id.* And third, the communication of information must

---

[2]   Defendant, for the first time in its reply brief, asserts in a footnote that it acted as a "channeler," not a consumer reporting agency, and suggests that the FCRA therefore does not apply here. ECF No. 58 at 2 n.2. Whatever the potential merit of that argument, the Court will not consider the argument at this stage. *See Anderson v. Rugged Races LLC*, 496 F. Supp. 3d 1270, 1285 n.11 (D. Minn. 2020) (citation omitted) ("[F]ederal courts do not, as a rule, entertain arguments made by a party for the first time in a reply brief.").

be "used or expected to be used or collected in whole or in part" for any one of several purposes. *Id.*

This final element is often referred to as the "purpose clause." *Id.* To satisfy the purpose clause, information within a report must have been "used *or* expected to be used *or* collected in whole or in part for" one of the listed purposes. 15 U.S.C. § 1681a(d)(1) (emphasis added). In using the conjunction "or," the clause "incorporates three distinct concepts: ultimate use, expectation of use, and reason for compilation." *Yang*, 146 F.3d at 1324. Accordingly, the statute sets forth more than one possibility or alternative to satisfy the "purpose clause."

Defendant argues that the "purpose clause" is not satisfied here because the background check it provided was not *used for* any purpose listed in Section 1681a(d)(1)(a)–(c). ECF No. 41 at 5–7. Specifically, Defendant argues that because Cross applied for a "volunteer" position, the report was not produced for establishing his eligibility for "employment." *Id.* True enough. But that does not end the matter. Indeed, the Eighth Circuit has held that if *any* of the three concepts is met, the purpose clause is satisfied. *See Bakker v. McKinnon*, 152 F.3d 1007, 1012 (8th Cir. 1998). In *Bakker*, a defendant argued that a credit report was not a consumer report because the credit report was ultimately used to evaluate "underlying litigation," which is not an enumerated purpose. *Id.* The Eighth Circuit explained that "whether a credit report is a consumer report *does not depend solely upon the ultimate use* to which the information contained therein is put, but instead, it is governed by the purpose for which the information was originally collected in whole or in part by the consumer reporting agency." *Id.* (citation

6

omitted) (emphasis added). Thus, "regardless of [the] intended use of the credit reports, these reports are consumer reports within the meaning of the FCRA" where "the information contained therein was collected for" an enumerated purpose. *Id.*; *see also Yang*, 146 F.3d at 1325 ("Under the plain language of the FCRA, a 'communication of information' is a 'consumer report' if *any one of the three components* in the Purpose clause is met.").[3]

Thus, the background check here would constitute a consumer report if Defendant expected the information it compiled on Cross to be used for an enumerated purpose or compiled that information to be potentially used for an enumerated purpose. Defendant

---

[3] Every other court to consider the question has agreed. *See, e.g.*, *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1273–74 (9th Cir. 1990) (citations omitted) ("[A] credit report will be construed as a 'consumer report' under the FCRA if the credit bureau providing the information *expects* the user to use the report for a purpose permissible under the FCRA, without regard to the ultimate purpose to which the report is *actually* put."); *St. Paul Guardian Ins. v. Johnson*, 884 F.2d 881, 884 (5th Cir. 1989) ("Although St. Paul did not ultimately use Johnson's credit report for one of the FCRA's enumerated purposes, the information in the report nevertheless was 'collected in whole or in part' by a credit reporting agency for FCRA enumerated purposes."); *Heath v. Credit Bureau of Sheridan, Inc.*, 618 F.2d 693, 696 (10th Cir. 1980) (explaining that the purpose clause "clearly requires judicial inquiry into the motives of the credit reporting agency, for only it 'collects' the information"); *Sullivan v. Wells Fargo Bank, N.A.*, 418 F. Supp. 3d 939, 945 (S.D. Ala. 2019) ("Regardless of the purpose for which the defendant obtained the plaintiff's credit report, it satisfies the Purpose clause and is thus a 'consumer report' if [a credit reporting agency] either collected the communicated information for a statutory purpose or expected the information to be used for a statutory purpose."); *Dodgson v. First Advantage Background Servs. Corp.*, No. 1:16-cv-1894-ODE-JSA, 2018 WL 1807010, at *8 (N.D. Ga. Feb. 1, 2018), *report and recommendation adopted*, 2018 WL 1807014 (N.D. Ga. Mar. 28, 2018) (holding background checks on volunteer little league coaches constituted consumer reports because the defendant "collected the criminal data information for various uses, including employment"). The Court notes that the *Dodgson* case appears to be on point.

acknowledges as much but nevertheless argues that Defendant did not compile the information or expect the information to be used for an enumerated purpose. But at this early stage, the Court must only consider whether "it is plausible on the face of [the] complaint" that Defendant "collected information on [Cross] for employment-related purposes or expected that information to be used for such purposes." *Thompson v. Before You Hire, Inc.*, No. 8:15-cv-2151-T-30EAJ, 2016 WL 259592, at *3 (M.D. Fla. Jan. 21, 2016). And here, Cross alleges that "Defendant . . . sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment," ECF No. 30 ¶ 2; that Defendant "sells background checks to employers for their use in deciding whether to offer employment to prospective employees," *id.* ¶ 15; and that "Defendant is a consumer reporting agency" who "regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties," *id.* ¶ 16.

That is sufficient at this stage. Accepting Cross's allegations as true, Defendant compiled the information on Cross expecting that it would be used for employment purposes or compiled it for that use. *Heath*, 618 F.2d at 696 ("[I]f a credit bureau supplies information . . . but does not know the purpose for which the information is to be used, it may be reasonable to assume the agency expected the information to be used for a proper purpose."); *Sullivan*, 418 F. Supp. 3d at 945 (denying Rule 12(b)(6) motion because complaint alleged that consumer reporting agency "either collected the communicated information for a statutory purpose or expected the information to be used for a statutory

purpose"). Accordingly, because Cross sufficiently pleaded that the background check Defendant provided is a "consumer report," the Court denies Defendant's motion to dismiss Cross's FCRA claim.[4]

## II. Cross's FCRA Claims are Preempted by the FCRA

Defendant alternatively argues that Cross's state-law negligence and defamation claims are preempted by the FCRA and must be dismissed. ECF No. 41 at 8–9.

The FCRA mandates that "no consumer may bring any action or proceeding in the nature of defamation . . . or negligence with respect to the reporting of information against any consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). "When this provision applies, it preempts state law claims for defamation, negligence, fraudulent misrepresentation, and intentional infliction of emotional distress, entitling a defendant to qualified immunity against the same." *Lloyd v. TD Bank USA NA*, No. 22-cv-2421 (DWF/DJF), 2023 WL 4561226, at *3 (D. Minn. July 17, 2023) (collecting cases).

Cross does not allege that Defendant engaged in malice or a willful intent to injure him, and during oral argument he conceded that if the FCRA claim moves forward, the

---

[4] Defendant is free to renew its argument at the summary-judgment stage. Indeed, whether Defendant expected the information to be used or compiled the information for employment-related purposes "clearly requires judicial inquiry into the motives of the credit reporting agency." *Heath*, 618 F.2d at 696. This is a fact-intensive question that requires "an examination of the bureau's purpose when it collected the information, and what it knew and expected concerning the use of the information supplied." *Id.* at 697. But at this early stage the Court must accept as true Cross's well-pleaded allegations, *see Martin*, 752 F.3d at 727, and considering those allegations, Cross has met his burden to state a claim for violation of the FCRA.

state-law claims may not. Thus, the Court grants Defendant's motion to dismiss Cross's state-law claims. And because no state-law claims remain, Cross's request for punitive damages under Minnesota law is also necessarily dismissed.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (ECF No. 39), is **GRANTED** in part and **DENIED** in part as follows:

1. Defendant's Motion is **DENIED** with respect to Cross's FCRA claim.

2. Defendant's Motion is **GRANTED** with respect to Cross's defamation and negligence claims. These claims are **DISMISSED WITHOUT PREJUDICE**.

3. Defendant's Motion is **GRANTED** with respect to Cross's state-law punitive damages request. That claim is **DISMISSED WITHOUT PREJUDICE**.

Dated: May 12, 2025                                   *s/Laura M. Provinzino*
                                                                               Laura M. Provinzino
                                                                               United States District Judge